*G. A. Torrey & C. W. Carter*, for the tenant.

---

## CHARLES D. MORSE *vs.* CITY OF WORCESTER.

Worcester.  Oct. 4, 1884. — June 29, 1885.   C. ALLEN & COLBURN, JJ., absent.

A bill in equity against a city, to abate a nuisance, alleged that the city, acting under the St. of 1867, *c.* 106, had changed, widened, and deepened the channel of a certain brook, and then used it for the purpose of the sewerage and drainage of the city, having constructed a great number of sewers and drains emptying into it; that the whole sewage of the city was discharged into it, and through it into a certain river; that a nuisance was thereby created, by which the plaintiff, who was the owner of a mill site on the river, was injured; that the city could and should have so constructed said sewers and drains, and should have so properly purified the sewage passing through them, as not to create a nuisance; and that it "carelessly, negligently, and unnecessarily so constructed said sewers and drains, and carelessly, negligently, and unnecessarily so discharged the waters therefrom, and so negligently omitted to take reasonable and proper precautions and methods in the construction of said sewers and drains and purification of said waters," that the nuisance complained of was created. *Held*, on demurrer, that the bill could be maintained.

The St. of 1867, *c.* 106, authorized a city to alter and change the channels of certain brooks, including a brook which emptied into a certain river, and to use and appropriate them for purposes of sewerage and drainage. A bill in equity,

by the owner of a mill site on the river, against the city, to abate a nuisance, alleged that the city had, within six years past, changed the outlet or mouth of the brook so that it emptied into the river at a point much nearer the plaintiff's mill than the original mouth was. *Held*, on demurrer, that it did not appear that this was not within the power given by the statute to alter and change the channels of the brooks.

BILL IN EQUITY to abate a nuisance. The case was heard, upon bill and demurrer, before *Devens*, J., who reserved it for the consideration of the full court. The facts appear in the opinion.

*E. R. Hoar & F. P. Goulding*, for the defendant.

*R. M. Morse, Jr.*, for the plaintiff.

MORTON, C. J.. The St. of 1867, *c.* 106, authorized the city of Worcester to fix the boundaries of several brooks named therein, one of which is Mill Brook, a natural stream emptying into the Blackstone River, and to " alter, change, widen, straighten, and deepen the channels of said brooks and remove obstructions therefrom, and . . . . use and appropriate said brooks, cover them, pave and enclose them in retaining walls, so far as they shall adjudge necessary for purposes of sewerage, drainage, and the public health."

The bill alleges that the city, acting under this statute, has changed, widened, and deepened the channel of Mill Brook, and now uses it for the purpose of the sewerage and drainage of the city, having constructed a great number of sewers and drains emptying into it; that the whole sewage of the city is discharged into it, and through it into the Blackstone River; that a nuisance is thereby created, by which the plaintiff, who is the owner of a mill site on the Blackstone River, is greatly injured; that the city could and should have so constructed said sewers and drains, and should have so properly purified the sewage passing through them, as not to create a nuisance; and that it " carelessly, negligently, and unnecessarily so constructed said sewers and drains, and carelessly, negligently, and unnecessarily so discharged the waters therefrom, and so negligently omitted to take reasonable and proper precautions and methods in the construction of said sewers and drains and purification of said waters," that the nuisance complained of is created. The defendant demurs to the bill; and therefore, for the purposes of this hearing, we must take all the facts alleged to be true.

The question of the rights and duties of the city in the use of Mill Brook as a sewer has been before this court in several previous cases. *Merrifield* v. *Worcester*, 110 Mass. 216, was an action of tort brought by a mill-owner on Mill Brook, on the ground that the sewage emptied into the brook corrupted the waters, and made them unfit for the uses of his mill. The court lay down, as the rule to govern the case, that, " in the construction of works so laid out, the town or city is responsible that it be done in a proper manner, and with a reasonable degree of skill and care ; and if, for want thereof, any unnecessary injury is caused to the property or rights of individuals, the town or city may be charged therewith in an action of tort." And the case was referred to assessors to determine " whether the damage which the plaintiff has suffered is attributable in any degree to the improper construction or unreasonable use of the sewers, or to the negligence or other fault of the defendant in the care and management of them."

The case of *Washburn & Moen Manuf. Co.* v. *Worcester*, 116 Mass. 458, was a suit in equity, like the case before us. The demurrer to the bill was sustained, the court saying that " the bill does not allege any negligence of the city, either in the manner in which the sewage was discharged from the mouth of the sewer, or in omitting to take proper precautions to purify it." In that case, the court state as a general principle, speaking of the construction of sewers, that, " if by an excess of the powers granted, or negligence in the mode of carrying out the system legally adopted, or in omitting to take due precautions to guard against consequences of its operation, a nuisance is created, the city may be liable to indictment in behalf of the public, or to suit by individuals suffering special damage," though it was not necessary to decide how far this principle was applicable to the case then before the court.

When the Legislature authorizes a city or town to construct sewers, or to use a natural stream as a sewer, it is not to be assumed that it intends to authorize the city or town so to construct its sewers, or so to use the stream, as to create a nuisance, unless this is the necessary result of the powers granted. On the contrary, if it is practicable to do the work authorized without creating a nuisance, it is to be presumed that the

Legislature intended that it should be so done. This principle has been recognized and applied in many cases. *Haskell* v. *New Bedford*, 108 Mass. 208. *Brayton* v. *Fall River*, 113 Mass. 218. *Boston Rolling Mills* v. *Cambridge*, 117 Mass. 396. *Stainton* v. *Metropolitan Board of Works*, 23 Beav. 225. *Mersey Docks* v. *Gibbs*, L. R. 1 H. L. 93. *Attorney General* v. *Colney Hatch Lunatic Asylum*, L. R. 4 Ch. 146. *Attorney General* v. *Leeds Corporation*, L. R. 5 Ch. 583.

The English cases we have cited were decided under statutes differing from ours, but they are instructive for their statements and discussion of the general principles applying in such cases, irrespective of the particular provisions of the statutes. They all concur in spirit and substance with the statement made by Lord Chancellor Hatherley in the case last cited: " When any person finds that the Legislature has authorized a work to be done (and, of course, the force of this is increased by the view we have taken, that the true construction of the act is, that it is to be done without creating a nuisance), he is not to assume it will create a nuisance. On the contrary, the presumption would be that the board would not do anything unlawful. It is lawful for them to make the sewers, it is lawful for them to conduct the sewage into the river, but they are to do it in such a way as not to create a nuisance."

In the case at bar, the Legislature authorized the city of Worcester to use Mill Brook as a sewer; by necessary implication, the statute authorized it to empty its sewage into Blackstone River; but we cannot presume that it was the intention of the Legislature to exempt the city from the obligation to use due care in the construction and management of its works, so as not to cause any unnecessarily injurious consequences to the rights of others. If it is practicable to use any methods of constructing the sewer, and, as a part of the construction, of purifying the sewage at its mouth, at an expense which is reasonable, having regard to the nature of the work and the magnitude and importance of the interests involved, it is the duty of the city to adopt such methods.

The case comes before us in such a form that we can do no more than state the general principles which must govern the hearing. The bill alleges negligence in constructing the sewer,

and in failing to use reasonable precautions to purify the sewage. We cannot anticipate what negligence may be proved. Negligence in this, as in most other cases, is largely a question of degree. If the plaintiff shows that, in constructing the sewer, or in adapting the brook to its use as a sewer, the defendant did the work in an improper manner, his bill can be maintained. So, if he proves that the defendant, in constructing the sewer, could have adopted, at an expense which is reasonable, a system of cesspools, or some other methods of purification, at the mouth of the brook, it may be that his bill can be maintained. We cannot say in advance that some such method may not be practicable, and within the duty of the defendant to use reasonable precautions, in doing the work authorized by the statute, to prevent a nuisance. This is a question of fact. The allegations of the bill are so broad that the demurrer cannot be sustained. The question whether, upon the existing facts and conditions, the defendant has been guilty of any negligence, cannot be determined until such facts are developed by the evidence at the hearing.

This is all that is necessary for the decision of this case. But, to prevent misunderstanding, we add, that, if the only mode of preventing the pollution of the river is found to be by the adoption of an extensive system of purification, independent of the construction of the sewer, requiring the taking of large tracts of land, we must not be understood as implying that it is within the duty or the power of the defendant to do this.

The power to convert the brook into a sewer carries by implication the power to expend money for any plan of work which is an incident or part of the main work authorized by the statute, but it would seem that the statute does not give the defendant power to take lands or expend money for an independent system of sewage purification. If such system is rendered necessary by the construction of the sewer, the remedy must be sought from the Legislature, which can best adjust and settle the conflicting rights and interests of the public and of the riparian owners upon the river.

The bill further alleges, as an independent ground of relief, that the defendant has, within six years past, changed the outlet or mouth of Mill Brook so that it empties into the river at a

point much nearer the plaintiff's mill than was the original mouth. We are of opinion that this was within the power given by the statute to alter and change the channels of the brooks. This power embraced the whole brook, and gave the right to make a change at its mouth, as well as in any other part of the brook. *Woodward* v. *Worcester*, 121 Mass. 245. There are no allegations to show that the city, before doing this, had exhausted its powers under the statute, or that for any reason the act was illegal.          *Demurrer overruled.*