## BOSTON BELTING COMPANY *vs.* CITY OF BOSTON.

Middlesex. November 14, 15, 1888. — March 5, 1889.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Boston — Improvement of Stony Brook — Action — Statutory Remedy — Arbitrament and Award — Negligence — Nuisance.*

The St. of 1874, c. 196, § 1, authorized the city of Boston to improve Stony Brook, and § 2 gave a remedy to "any person injured in his property by any of the acts" of the city in so doing, while § 9 contained a proviso that the statute should not be construed to "authorize any interference with the estate owned" by a corporation on the brook, or with "its rights in said brook as to the use and purity of its waters." The corporation brought an action to recover, in certain counts, for damage caused by the setting back of water upon its premises from the negligent manner in which the city did the work below its estate, and, in another count, for that resulting from a scarcity of water during a portion of the year, owing to the changes made above its estate; and referees made an award to the corporation in a gross sum for both kinds of damage. *Held,* that the city was liable for the setting back of water due to its negligence, but that, in the absence of evidence that the scarcity was due to any negligence on its part, the referees had no power to assess damages therefor; and that the award, as it afforded no means of determining the amount assessed for the latter damage, must be set aside.

MORTON, C. J. This is an action of tort. The declaration contains eight counts. The first seven counts are for similar causes of action occurring in different years. Each alleges in substance that the plaintiff owned land and buildings on Stony Brook, and was entitled to the natural and usual flow of its waters; that the city of Boston, acting under the St. of 1874, c. 196, undertook to alter, deepen, and widen the brook; that it did the work on the brook above the plaintiff's premises so negligently that the water poured down in large and unusual quantities; and that it negligently failed to provide and keep open sufficient channels and conduits to carry off the water into the sea, and that thus the water was set back upon the plaintiff's premises to its great injury. The eighth count alleges that the plaintiff, as owner on the brook, is entitled to the natural and usual flow of its waters; that it was the duty of the defendant, under the statute, to do the work so as not to interfere with the rights of the plaintiff; that the defendant, disregarding its duty,

so did the work as to cause the natural flow of the stream to be greatly increased at times, and to be greatly diminished at other times, causing a scarcity of water at the plaintiff's premises during a part of the year, to the injury of its business.

The case was referred by the Superior Court to three referees, who have returned an award in favor of the plaintiff in a gross sum for all damages proved. The referees found that the city of Boston did not make suitable provision below the works of the plaintiff to carry the water off to the sea, and that its failure to do so was improvident and improper, and constituted negligence on the part of the city; but that the plaintiff made no claim that any part of said works was constructed in an unskilful or unworkmanlike manner. They also found that the doings of the city above the plaintiff's works created an unnatural scarcity of water at the works during the summer months of each year, and they thereupon found for the plaintiff upon all the counts in a gross sum. It thus appears that their award includes damages, not only for the negligent construction of the work below the plaintiff's premises, but also for any injury caused to the plaintiff by the work above its premises, in regard to which no negligence is shown on the part of the city.

The St. of 1874, c. 196, in § 1, authorizes the city of Boston to take the control of Stony Brook and its tributaries, so far as they are within the limits of the city, and to remove obstructions, divert the water, alter the course, and deepen the channel, and for this purpose to take or purchase land not exceeding four rods in width on either side of the brook. Section 2 provides that, if any person is injured in his property by any of the acts done by said city under § 1, he shall apply to the board of aldermen, who shall assess his damages, and, if he is aggrieved by their estimate, he may apply for a jury, and have his damages assessed in the manner provided when land is taken in laying out highways.

Where a city or town is authorized by the Legislature to make a public improvement which must result in injury to the property of citizens, and the statute makes provision for ascertaining the damages for such injury under special proceedings, the remedy thus provided is exclusive of all others, and the

citizen cannot maintain an action at law for any injury which is within the scope of the remedy provided by the statute. But if injury is done which is not the necessary result of the public work authorized by the Legislature, but is caused by the unskilful and negligent manner in which the work is done, the person injured may maintain an action at law for such injury. These principles are recognized in many cases, of which it is necessary to cite only a few. *Perry* v. *Worcester*, 6 Gray, 544. *Washburn & Moen Manuf. Co.* v. *Worcester*, 116 Mass. 458. *Morse* v. *Worcester*, 139 Mass. 389.

Applying these rules to the case at bar, we are of opinion that the city is liable in this action for the injury caused by its delay in providing a sufficient outlet into the sea to carry off the water which, by its work upon the upper part of the stream, had been increased in volume beyond its natural flow. The referees have found that there are a number of streets which cross the stream above the plaintiff's works; that before the city entered upon the work there were small culverts under these streets ; that the streets acted as dams, holding back the water in wet seasons; that the city enlarged the culverts so as to permit the water to flow down in excessive quantities, and made no provision to enlarge the outlet, or to keep the lower part of the stream unobstructed, so as to permit the excessive flow of the water to escape into the sea. This was a fault in the manner of performing the work authorized by the Legislature. A man of reasonable foresight and prudence would not begin such work by altering the upper part of the stream so as to enlarge the flow of the water beyond the capacity of its mouth, without first enlarging its outlet so as to be sufficient for the increased flow. The referees were justified in the finding that this was negligence which made the city liable in this action.

The defendant contends that the city is not liable for this or any other damage, because the fault, if any, was the fault of the plan of improvement adopted, and relies upon *Child* v. *Boston*, 4 Allen, 51, and several other similar cases, which hold that a city is not liable for any defect in the plan or system of sewerage built by order of the mayor and aldermen. But these cases go upon the ground that the mayor and aldermen in laying out

sewers act as an independent board of public officers, and that the city has no control over, and no responsibility for, the plan or system adopted; but they admit that it is responsible for any negligence in the performance of its duty properly to construct and maintain the sewers. These reasons for exempting the city from responsibility do not exist in the case at bar, and the cases have no application.

But we think different considerations apply in regard to the injury sustained by the plaintiff by reason of the occasional scarcity of water caused by the work done by the city upon the upper part of the stream. No negligence is shown in the manner of performing this work. It was done under the authority of and in accordance with the statute. It was impossible to carry out the object of the statute, and prevent the danger of inundations in time of freshet, except by enlarging the culverts and making changes in the upper part of the stream, of which the natural effect would be to cause a scarcity of water in dry times. Such scarcity is incidental to the accomplishment of the public work, and any injury caused by it is to be recovered in the manner provided by the statute, and not by a suit at law.

But the plaintiff contends that this case is an exception to the general rule, because of the clause in § 9 of the St. of 1874, c. 196, which provides that the act shall not be construed to " authorize any interference with the estate owned by the Boston Belting Company, or its rights in said brook as to the use and purity of its waters." The claim is that the city is not authorized by the statute to do any act which will in any manner injure or affect the rights of the plaintiff. We cannot adopt this construction. It would render the act entirely nugatory, and defeat wholly its object and purpose. The statute contemplates a great public improvement, necessary to prevent the damages caused by the occasional overflowing of Stony Brook. It must have been seen by the Legislature that, in order to accomplish its purpose, great alterations must be made in the brook, and that it would be impossible to make such alterations and yet have the water run through the plaintiff's land in the same manner as it did before. We cannot believe that it was the intention of the Legislature to annul the statute by the pro-

vision we are considering. Its purpose was, we think, to prevent the city from diverting the brook from the estate of the plaintiff, and from polluting the purity of the water above its estate. This construction makes it consistent with the other parts of the statute.

For these reasons we are of opinion that the referees had no right to award damages for the occasional scarcity of water caused by the work of the city, and we think this question was fairly raised before the referees by the second request of the defendant for rulings.* As their award furnishes no means of determining what amount of damages was awarded for this injury, it follows that the award must be set aside. Under these circumstances, the question whether the defendant has the right to have all the evidence before the referees reported probably becomes of no practical importance, and we do not discuss it.

A rescript will be sent to the Superior Court, directing that the award be rejected, and the future disposition of the case is within the control of that court.

,     *Award rejected.*

*E. R. Hoar & W. G. Russell*, (*Samuel Hoar* with them,) for the plaintiff.

*A. J. Bailey*, (*R. W. Nason* with him,) for the defendant.

---

* This request, which the referees refused, was based on the facts found by them and recited in the opinion, and was as follows: "2. That the city had authority in law to widen the culverts under the streets crossing Stony Brook in the manner shown by said facts, and is not liable in damages in this action for any injury caused to the plaintiff in the manner shown by said facts."