T. GREGORY SULLIVAN & another *vs.* COMMONWEALTH.

Middlesex.    January 7, 1957. — April 1, 1957.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Eminent Domain,* Injury to property without taking, Right to damages, What constitutes taking. *Constitutional Law,* Eminent domain. *Nuisance. Blasting. Public Works. Commonwealth,* Tort. *Actionable Tort. Metropolitan District Water Supply.*

St. 1938, c. 460, authorizing the construction of an aqueduct for the Commonwealth and the taking of land by eminent domain therefor but containing no express provision for damages for injury to land not taken did not impliedly authorize recovery under G. L. (Ter. Ed.)

c. 79 of damages for injury to a house, located on land not taken, caused by repeated vibrations in the course of necessary, nonnegligent rock blasting carried on at the aqueduct during its construction. [622–623]

Nothing in G. L. (Ter. Ed.) c. 92, § 32, or in any other statute relating to the Metropolitan District Commission or its predecessor boards authorized recovery of damages from the Commonwealth for injury to a house on land not taken by eminent domain resulting from vibrations caused by rock blasting carried on at an aqueduct during its construction for the Commonwealth. [623]

G. L. (Ter. Ed.) c. 79 itself gives no right expressly or impliedly to the owner of real estate not taken by eminent domain to recover damages for injury thereto caused by the construction of a public improvement. [623–625]

Even if necessary, nonnegligent blasting done in the course of the construction of an aqueduct for the Commonwealth and causing by repeated vibrations injury to a house on land not taken for the project constituted a nuisance, the landowner was not entitled to recover damages from the Commonwealth under G. L. (Ter. Ed.) c. 79 in the absence of constitutional requirement or statutory provision therefor. [626]

Certain necessary, nonnegligent rock blasting carried on over a substantial period at an aqueduct during its construction for the Commonwealth and causing by vibration serious injury to a house located on land not taken by eminent domain for the project did not constitute a taking of a servitude in the land entitling its owner to compensation under art. 10 of the Declaration of Rights of the Massachusetts Constitution or the Fourteenth Amendment of the Federal Constitution in the absence of statutory provision for such compensation. [627–629]

PETITION, filed in the Superior Court on October 20, 1950. The case was tried before Sullivan, J.

James F. Sullivan, for the petitioners.

George Fingold, Attorney General, & David L. Winter, Assistant Attorney General, for the Commonwealth, submitted a brief.

WHITTEMORE, J.   These are the petitioners' exceptions to the direction of a verdict for the Commonwealth on the trial of their petition for the assessment of damages under G. L. (Ter. Ed.) c. 79 for injuries caused to the house owned by them at 320 Chestnut Street, Newton, by rock blasting in the course of the construction of an aqueduct to improve the distribution of water to the metropolitan water district.

There was evidence from which the jury could have found that the blasting over a period of weeks or months between

April, 1948, and August, 1949, caused serious injury to the petitioners' house including cracked plaster and the breaking of a pipe in the attic when the petitioners were away for several days with consequent extensive water damage, and that the injury was caused by vibrations transmitted from the area of the blasts through the stratum of solid and rigid rock which underlay the petitioners' house and in which the aqueduct, at some distance from the petitioners' house, was being constructed; and also that the vibrations in the rock caused repeated vibrations in the house and in the pipe which extended up through the house to the attic, and eventually caused the pipe to sustain "elastic fatigue" and snap. It was undisputed that the work was done by independent contractors and that blasting was necessary to construct the tunnel. There was no evidence of use of more explosives than was required or would be permitted under any standards which might have been shown to be applicable. The only express testimony as to due care was that "the blasting at all times was performed in a careful and approved manner."

We have discovered no statutory authority express or implied for recovery under c. 79 for injury caused by this particular public work to property not taken. And the facts, in their aspect most favorable to the petitioners, do not show that property of the petitioners has been "appropriated to public uses" so that they are assured "reasonable compensation therefor" by Massachusetts Constitution, Declaration of Rights, art. 10. Therefore, for reasons hereinafter stated the petitioners have no remedy under c. 79. We discuss first the absence of a statutory provision for damages.

1. Since the decision of *Callender* v. *Marsh*, 1 Pick. 418, ". . . it has been the almost invariable practice for the Legislature, whenever it authorizes the infliction of damage to private property by a public improvement, to provide that the owner may recover the amount of such damage by petition to the Superior Court . . .." 1. Preliminary Report of the Commissioners to Consolidate & Arrange the

General Laws (1918) 20. That practice, however, was not followed in respect of the statute under which the subject aqueduct was built.

The authorizing statute is St. 1938, c. 460, as amended by St. 1946, c. 515, in respects not now material. It provides in § 2 that the metropolitan district water supply commission acting for the Commonwealth may take land and rights by eminent domain and in § 3 that "Any taking under this act may be in fee or otherwise, perpetual in duration or for a limited period of time, according as the commission shall determine and set forth in the order of taking. All takings under this act and all proceedings in relation to or growing out of the same shall conform to chapter seventy-nine of the General Laws, except in the following particulars: (a) The commission need make no award of damages sustained by persons or corporations in their property by any such taking. (b) The notice required by section eight of said chapter may be given at any time within one year after the recording of the order of taking as provided in section three of said chapter. (c) Petitions for the assessment of damages under section fourteen of said chapter may be filed within two years after the recording of the order of taking provided for in section three of said chapter. So much of section sixteen of said chapter seventy-nine, as amended, as appears after the word 'vested', in the third line, shall have no application to takings under this act." There is no express provision in respect of damages for injury to land not taken. We think that this reference to c. 79 is to be interpreted broadly in view of the "almost invariable practice" of the Legislature. But the authorizing words limit the application of c. 79 to "All takings under this act and *all proceedings in relation to or growing out of the same . . .*" (emphasis supplied). This petition is not in relation to, nor does it grow out of, a taking. It is in relation to and grows out of construction operations authorized by the statute in all lands through which the project might pass, whether owned by, granted to or taken by the Commonwealth. We therefore can find no implication in the reference to c. 79 of

an intention to authorize the recovery of damages for injuries to land not taken.

The authorizing statute refers to other statutes which provide for earlier related construction but the provisions therein for recovery of damages are not broad enough to cover claims arising under this statute. See St. 1938, c. 460, § 1; St. 1926, c. 375; St. 1927, c. 321; *Connor v. Metropolitan District Water Supply Commission,* 314 Mass. 33; *Beaman v. Commonwealth,* 304 Mass. 443.

We have discovered no general authority for the recovery of damages such as are here claimed in the statutes relating to the metropolitan district commission or predecessor boards.[1] General Laws (Ter. Ed.) c. 92, § 32, contains the only current general provision for recovery of damages. This section, after providing that "The [metropolitan district] commission in constructing, maintaining and operating the water and sewerage system, water supply and sewage disposal may" do various things, provides only that "Any person injured in his property by the entry upon or use of his land by the commission under this section may recover his damages under chapter seventy-nine."

The right to recover damages for injury to land not taken is not given expressly or by necessary implication in c. 79. The petitioners claim under § 9 which provides that "When injury has been caused to the real estate of any person by the establishment, construction . . . [and so forth] of a

---

[1] Statute 1926, c. 375, § 1, established the metropolitan district water supply commission. Statute 1938, c. 460, § 1, provides that the "proposed works and appurtenances and property incidental thereto, when completed, shall be turned over to the metropolitan district commission . . . ." Statute 1947, c. 583, § 1, abolished the metropolitan district water supply commission and constituted the metropolitan district commission its lawful successor and expressly directed that it "shall construct all water and sewerage system projects now under construction by said metropolitan district water supply commission, and those authorized for future construction by said commission." The metropolitan district commission was created by St. 1919, c. 350, Part IV, § 123, succeeding to rights, powers and duties of other agencies including the metropolitan water and sewerage board which was a consolidation of other boards by St. 1901, c. 168. One of the consolidated boards was the metropolitan water board established by St. 1895, c. 488. Section 12 of this statute provided for compensation to persons injured by any taking of property or by construction or "any other act or thing done by said board under this act." But G. L. (1921) c. 282, expressly repealed St. 1895, c. 488, except §§ 4, 14, 16, 17, and 22.

public improvement which does not involve the taking of
private property, and he is entitled to compensation by law
for such injury, if such establishment, construction . . .
[and so forth] was effected by or in accordance with a formal
vote or order . . . the damages shall be awarded, deter-
mined and collected and notice of the order shall be given
in the same manner as if there had been a taking . . . under
section one." We do not pause to determine whether the
injury here was caused by construction which was effected
by or in accordance with a formal vote or order. The com-
missioners in reporting this section (Preliminary Report,
*ibid.*, 20), after stating, as quoted above, the almost in-
variable practice to provide for such damages, said "this
section [9] is intended to provide a procedure for such
cases. It does not in itself create a liability for damages,
but leaves that to the statute authorizing the particular
injury."

If reference is had to § 10 [1] (see *United States Gypsum
Co.* v. *Mystic River Bridge Authority*, 329 Mass. 130, 141–
142), there is no more reason than in the case of § 9 to con-
strue that the section itself gives a right to recover damages.
The commissioners (*ibid.*, 21) said as to § 10, "This section
is intended to provide a remedy when there has been a
taking, or an injury for which the owner is entitled to com-
pensation, and there is no formal record which determines
the extent of the taking or injury and by which the amount
of the damages can be gauged, and the time when they be-
come payable fixed."

Our attention has been directed to no decision of this
court, and we have found none, which holds that the pro-

---

[1] "When the real estate of any person has been taken for the public use or
has been damaged by the construction, maintenance, operation, alteration,
repair or discontinuance of a public improvement or has been entered for a
public purpose, but such taking, entry, or damage was not effected by or in
accordance with a formal vote or order of the board of officers of a body
politic or corporate duly authorized by law, or when the personal property
of any person has been damaged, seized, destroyed or used for a public pur-
pose, and by such taking, damage, entry, seizure, destruction or use he has
suffered an injury for which he is entitled to compensation, the damages
therefor may be recovered under this chapter . . . ."

visions of c. 79 or like provisions import a right to damages.[1] In *Wine* v. *Commonwealth*, 301 Mass. 451, the statute (St. 1932, c. 241, § 3) provided that "The cost of constructing said bridge and land takings for the same, including any damages awarded or paid on account of any taking of land or property therefor, or any injury to the same, . . . shall not exceed, in the aggregate . . . [a stated sum]" and shall be paid from the highway fund. The court (page 458) said that "under similar statutes" special and peculiar, direct and proximate damages could be recovered, and cited cases under express statutory authorizations. In *Wyman* v. *Boston*, 282 Mass. 204, there was express statutory provision (St. 1923, c. 480, § 8) and the statement (page 207) that "the section refers to G. L. c. 79 as the measure of their rights as well as the means of enforcing them" of course does not mean that c. 79 is the *source* of the rights. In *Nichols* v. *Commonwealth*, 331 Mass. 581, 584, the taking was pursuant to c. 81, § 7C, which made express provision for the recovery of "damages under chapter seventy-nine for the taking of or injury to . . . easements of access . . ." and the reference in the opinion to c. 79, § 12, states the kinds of damages recoverable under the right given in c. 81. Section 12 defines the "measure of damages" in stated cases but does not purport to create a right thereto. The instant case does not present for construction a statute authorizing by any reasonable implication the recovery of damages for injury to land to the extent that c. 79 (that is, § 12) provides a *measure* of damages.

The Legislature from time to time has made special provision for damages which would not be recoverable under a general authorization of recovery for injury to property not taken because the injury is to be deemed except therefor "consequential"[2] or general and public. See St. 1927,

---

[1] There is express general statutory provision for recovery of damages for injury to land not taken in the many cases arising in connection with the construction of public ways. See G. L. (Ter. Ed.) c. 81, § 7 (State highways); and c. 82, § 7 (highways), § 24 (town ways and private ways).

[2] That is, too remote, or for other reason not recoverable in the particular circumstances. For a summary of the criticism of the use of this ambiguous term see Nichols, Eminent Domain (3d ed.) § 14.1.

c. 321; *Connor* v. *Metropolitan District Water Supply Commission,* 314 Mass. 33; *Beaman* v. *Commonwealth,* 304 Mass. 443; St. 1895, c. 488; *Fairbanks* v. *Commonwealth,* 183 Mass. 373; *Nashua River Paper Co.* v. *Commonwealth,* 184 Mass. 279, 282; *McNamara* v. *Commonwealth,* 184 Mass. 304, 305. It has been necessary in many cases to distinguish between such injuries and those which are direct and special. These cases show that, under a general authorization, recovery may not be had for injuries which are remote or general and public; they do not establish that there may be recovery for direct and special injury, which does not constitute an appropriation of property, in the absence of any statutory provision therefor. See *Hyde* v. *Fall River,* 189 Mass. 439; *Connor* v. *Metropolitan District Water Supply Commission,* 314 Mass. 33, 37, and cases cited; Nichols, Eminent Domain (3d ed.) § 6.38 [1].

2. The petitioners urge that we call what happened a nuisance (see *Hakkila* v. *Old Colony Broken Stone & Concrete Co.* 264 Mass. 447, where material was thrown on the land), and they cite cases in which municipalities or public agencies have been held liable for injury caused by private nuisance in the absence of proof of negligence. But without pausing to discuss the basis of liability in such cases, it is sufficient to note that the Commonwealth is not liable unless the State or Federal Constitution or a statute imposes liability. "[E]ven if the thing authorized would be actionable at common law and a nuisance but for the statute, still it is not necessarily a taking, and unless it does amount to that no compensation can be recovered if the statute does not give it." *Lincoln* v. *Commonwealth,* 164 Mass. 368, 374–375. The Commonwealth may be sued only so far as it has consented thereto. *Glickman* v. *Commonwealth,* 244 Mass. 148. *Putman Furniture Building, Inc.* v. *Commonwealth,* 323 Mass. 179, 185. To the extent that there is liability for a "nuisance" apart from negligence, there being no taking, and no express statutory basis for damages, the remedy is in an action of tort. *Bacon* v. *Boston,* 154 Mass. 100, 102. *Miles* v. *Worcester,* 154 Mass. 511. *Jones* v.

*Great Barrington*, 273 Mass. 483. See *Wesson* v. *Washburn Iron Co.* 13 Allen, 95; *Jones* v. *Hayden*, 310 Mass. 90. The petitioners have not brought such an action and the Commonwealth, by G. L. (Ter. Ed.) c. 258, or otherwise, has not consented to be sued in tort. *Burroughs* v. *Commonwealth*, 224 Mass. 28, 29. *Glickman* v. *Commonwealth*, 244 Mass. 148.

3. There was no such "great" nuisance imposed on the petitioners' property as to constitute a taking. See *Bacon* v. *Boston*, 154 Mass. 100, 102; Nichols, Eminent Domain (3d ed.) § 6.33. Compare *Lentell* v. *Boston & Worcester Street Railway*, 202 Mass. 115, 120. The question was raised by Shaw, C.J., in *Dodge* v. *County Commissioners of Essex*, 3 Met. 380, where there was damage to and near destruction of the plaintiff's nearby home, by necessary nonnegligent blasting. The court held this was recoverable damage under the statute and said (page 381), "It is not now [because of the statute] necessarily a question, whether the property of an individual, thus necessarily and injuriously affected, and in effect withdrawn from the profitable use and beneficial control of the owner, is appropriated to public uses, within the provision of the 10th article of the declaration of rights. It was quite competent for the legislature, in providing for the prosecution of a great public work, to require compensation to be made to persons injuriously affected by it, though not a case coming within the express requisitions of the bill of rights . . .."

Some acts, done by governmental agencies, which could be deemed nuisances and which affected but did not destroy or prevent all use of the subject property, have been held to be takings under the Fifth Amendment to the United States Constitution. *Richards* v. *Washington Terminal Co.* 233 U. S. 546 (forcing railroad tunnel smoke and gases to issue from a single portal onto the plaintiff's property). *Portsmouth Harbor Land & Hotel Co.* v. *United States*, 260 U. S. 327 (deliberate and repeated firing of batteries over the plaintiffs' land). *United States* v. *Causby*, 328 U. S. 256 (repeated flying of military planes so low as to destroy use

of land for chicken farm). But in all these cases there were such aspects of premeditation and intention of continuance as would support the concept of the creation of a servitude. See *United States* v. *Dickinson*, 331 U. S. 745, 748. This principle does not support a claim under the Fifth Amendment for damage to nearby property from blasting.[1] *Keokuk & Hamilton Bridge Co.* v. *United States*, 260 U. S. 125, 126 (Holmes, J. "However small the damage, it may be that deliberate action in some cases might generate the same claim as other forms of deliberate withdrawal of property . . . . But . . . it is enough to say that this is an ordinary case of incidental damage which if inflicted by a private individual might be a tort but which could be nothing else.") Our decisions suggest no basis for a broader concept of appropriation or taking under art. 10 of the Declaration of Rights than is shown in the foregoing cases under the Fifth Amendment. *Boston & Roxbury Mill Corp.* v. *Newman*, 12 Pick. 467, 482. *Brigham* v. *Edmands*, 7 Gray, 359, 363. *Cavanagh* v. *Boston*, 139 Mass. 426, 434–435. *Miller* v. *Horton*, 152 Mass. 540, 547. *Bacon* v. *Boston*, 154 Mass. 100, 102. *Chelsea Dye House & Laundry Co.* v. *Commonwealth*, 164 Mass. 350, 353. *Sawyer* v. *Commonwealth*, 182 Mass. 245, 247. *Lentell* v. *Boston & Worcester Street Railway*, 202 Mass. 115, 120. *Home for Aged Women* v. *Commonwealth*, 202 Mass. 422, 431, 436. *Connor* v. *Metropolitan District Water Supply Commission*, 314 Mass. 33, 37, and cases cited. *United States Gypsum Co.* v. *Mystic River Bridge Authority*, 329 Mass. 130, 135.

Even though here the risk of injury by blasting to some property was necessary [2] to the improvement and the pos-

---

[1] There is some suggestion in some cases elsewhere to the contrary. See 18 Am. Jur., Eminent Domain, § 135, and cases cited; Nichols, Eminent Domain (3d ed.) § 6.38. The issue has been obscured or rendered insignificant in many States where constitutional provisions prohibit either the taking or the damaging of property without compensation. *Ibid.*, §§ 6.38 [4]; 6.44. 18 Am. Jur., Eminent Domain, § 136.

[2] In actions of tort we have held with some other jurisdictions that in the absence of negligence there is no liability for injuries caused by blasting unless there is a direct trespass by the hurling of debris or blasted material directly onto the property and we have called the damage which is caused only by concussion or vibration "consequential." *Dolham* v. *Peterson*, 297 Mass.

sibility of injury to some property located on the rock stratum might have been foreseen (compare *John Horstmann Co.* v. *United States*, 257 U. S. 138), there was no deliberate act in respect of the petitioners' property, and no basis for inferring an actual intention to withdraw the property from their use for any length of time. There was no act with known result from which, and the repetition of like acts thereafter, an implication of such intention could arise. There is no basis for a claim under art. 10 that a servitude has been imposed on the petitioners' land. We need not decide what precise case would be within the principle that the Legislature does not have "an unlimited right to destroy property without compensation, on the ground that destruction is not an appropriation to public use within Article X of the Declaration of .Rights." *Miller* v. *Horton*, 152 Mass. 540, 547. It is sufficient to hold as we do that the accidental aspects of the injury to the petitioners' house exclude this case.

Manifestly, if this is so no question arises under the less direct Fourteenth Amendment to the Constitution of the United States. See *Connor* v. *Metropolitan District Water Supply Commission*, 314 Mass. 33, 36.

In *United States* v. *Willow River Power Co.* 324 U. S. 499, 502, the court said, "The Fifth Amendment, which requires just compensation where private property is taken for public use, undertakes to redistribute certain economic losses inflicted by public improvements so that they will fall upon the public rather than wholly upon those who happen to lie in the path of the project. It does not undertake, however, to socialize all losses, but those only which result from a taking of property. If damages from any other cause are

---

479, 482. *Jenkins* v. *A. G. Tomasello & Son, Inc.* 286 Mass. 180, 186. *O'Regan* v. *Verrochi*, 325 Mass. 391, 392–393. *Coughlan* v. *Grande & Son, Inc.* 332 Mass. 464, 467. *Dalton* v. *Demos Brothers General Contractors, Inc.* 334 Mass. 377. See *Murphy* v. *Lowell*, 128 Mass. 396; *Goldman* v. *Regan*, 247 Mass. 492, 494; *Hakkila* v. *Old Colony Broken Stone & Concrete Co.* 264 Mass. 447, 452. In support of a different rule it has been urged that there is no logical basis for the distinction. See Harper and James, The Law of Torts, § 14.7, and cases cited; Prosser, Law of Torts (2d ed.) 336; Smith, Liability for Substantial Physical Damage to Land by Blasting, 33 Harv. L. Rev. 542, 667.

to be absorbed by the public, they must be assumed by act of Congress and may not be awarded by the courts merely by implication from the constitutional provision." This principle is applicable in construing art. 10. Whether this is an appropriate case for a provision for compensation for injuries from a public improvement, "a remedial provision . . . made in the spirit of the declaration of rights" (Shaw, C.J., in *Parker* v. *Boston & Maine Railroad,* 3 Cush. 107, 113), is not for us to decide.         *Exceptions overruled.*